FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 27, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BEATRIZ J.,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                              Defendant. | NO:  1:22-CV-3137-RMP<br><br>ORDER DENYING PLAINTIFF'S<br>BRIEF AND GRANTING<br>DEFENDANT'S BRIEF |

BEFORE THE COURT, without oral argument, are briefs from Plaintiff Beatriz J.[1], ECF No. 10, and Defendant the Commissioner of Social Security (the "Commissioner"), ECF No. 12.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), of the Commissioner's denial of her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act").  *See* ECF No. 10 at 2.

---

[1] In the interest of protecting Plaintiff's privacy, the Court uses Plaintiff's first name and last initial.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 1

Having considered the parties' briefs, ECF Nos. 10 and 12; Plaintiff's reply, ECF No. 14; the administrative record, and the applicable law, the Court is fully informed. For the reasons set forth below, the Court denies judgment for Plaintiff and directs entry of judgment in favor of the Commissioner.

## BACKGROUND

### General Context

Plaintiff protectively filed for DIB on approximately May 28, 2015, alleging an onset date of October 28, 2013. *See* Administrative Record ("AR")[2] 129–30. Plaintiff was 36 years old on the alleged disability onset date and asserted that she was unable to work due to neck and back injuries, depression, bilateral hand tingling, left leg pain, and left arm pain. AR 129. Plaintiff alleged that she stopped working prior to March 30, 2018, because of her conditions. AR 87. Plaintiff's application was denied initially, upon reconsideration, and following an unfavorable decision by an Administrative Law Judge ("ALJ") in August 2018. *See* AR 162–73. Plaintiff sought review by the Appeals Council, which remanded Plaintiff's application for rehearing on November 29, 2019. AR 181.

---

[2] The AR is filed at ECF No. 8.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 2

On March 9, 2021, Plaintiff appeared by telephone, represented by her attorney Kathryn Higgs and attended by a Spanish interpreter, Vismar[3], at a hearing held by Administrative Law Judge ("ALJ") M.J. Adams from Seattle, Washington. AR 80–102.  The ALJ heard from Plaintiff.  AR 91–102.  ALJ Adams held a supplemental hearing on October 28, 2021, at which Plaintiff was represented by Ms. Higgs and assisted by interpreter Kathryn Montano.  AR 104–06.  ALJ Adams heard from Plaintiff and from Vocational Expert ("VE") Fred Cutler.  AR 105–26. ALJ Adams issued an unfavorable decision on November 10, 2021, and the Appeals Council denied review.  AR 1–8, 21–38.

***ALJ's Decision***

Applying the five-step evaluation process, ALJ Adams found:

**Step one:** Plaintiff last met the insured status requirements of the SSA on March 31, 2020.  AR 24.  Plaintiff did not engage in twelve consecutive months of substantial gainful activity from her alleged onset date of October 28, 2013, through her date last insured of March 31, 2020.  AR 24 (citing 20 C.F.R. § 404.1571 *et seq*).

**Step two:** Through the date last insured, Plaintiff had the following severe impairments: lumbar and cervical spine conditions; costochrondritis; obesity; depression; anxiety disorder; and somatoform disorder, pursuant to 20 C.F.R. §§

---

[3] The interpreter appears to have a mononym, as only one name appears for that individual in the transcript.  AR 80.

404.1520(c).  AR 24.  The ALJ memorialized that, "regardless of the precise mental and physical diagnoses [he found] severe, [he] considered all [of] the claimant's symptoms as reflected in the longitudinal record in evaluating his testimony and in assessing the residual functional capacity below."  AR 24.

**Step three:** The ALJ concluded that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 24 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). The ALJ memorialized that Plaintiff's spine symptoms do not meet listing 1.15 (disorders of the skeletal spine).  AR 24–25.  The ALJ further considered whether the functional limitations caused by obesity medically equal a listing, considered alone or in combination with other impairments.  AR 25.  Regarding Plaintiff's mental impairments, the ALJ considered listings 12.04 for depressive, bipolar, and related disorders, 12.06 for anxiety and obsessive-compulsive disorders, and 12.07 for somatic symptom and related disorders.  AR 25.  The ALJ considered whether Plaintiff's impairments satisfy the "paragraph B" criteria, requiring at least one extreme or two marked limitations in four broad areas of functioning.  AR 25–26. The ALJ found Plaintiff only moderately limited in understanding, remembering, or applying information and in concentrating, persisting, or maintaining pace and only mildly limited in interacting with others and in adapting or managing oneself.  AR

26.  Therefore, the ALJ found that the "paragraph B" criteria were not satisfied and further found that the "paragraph C" criteria are "not present in this case."  AR 26.

**Residual Functional Capacity ("RFC"):** The ALJ found that Plaintiff, through the date last insured, had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> She could lift and/or carry 10 pounds frequently and 20 pounds occasionally. She could stand and/or walk for a total of 6 hours and could sit for a total of 6 hours. Pushing and pulling was unlimited except for the above limitations regarding lifting and carrying. She could occasionally climb ladders, ropes, or scaffolds, and could frequently climb ramps and stairs. She could frequently stoop, kneel, and crouch. She could occasionally crawl. She could occasionally reach overhead bilaterally. She could understand, remember, and carry out only simple instructions. She could exercise simple workplace judgment. She could perform work that is learned by on-the-job training beyond a short demonstration lasting up to and including one month. She could respond appropriately to supervisors and co-workers. She could deal with occasional changes in the work environment. She could have only occasional interaction with the public.

AR 27.

In determining Plaintiff's RFC, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms, "[h]owever, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 28.

**Step four:** The ALJ found that, through the date last insured, Plaintiff was unable to perform any past relevant work.  AR 36 (citing 20 C.F.R. § 404.1565).

**Step five:** The ALJ found that Plaintiff has a marginal education; was 40 years old, which is defined as a younger individual, age 18-49, on the date last insured; and that transferability of job skills is not material to the determination of disability because Plaintiff's past relevant work is unskilled.  AR 36 (citing 20 C.F.R. §§ 404.1569 and 404.1569a).  The ALJ found that given Plaintiff's age, education, work experience, and RFC, Plaintiff could have made a successful adjustment to other work that exists in significant numbers in the national economy.  AR 36.  Specifically, the ALJ recounted that the VE identified the following representative occupations that Plaintiff could have performed with the RFC through the date last insured: housekeeper/cleaner (light, unskilled, with around 193,000 jobs nationally); small products assembler I (light, unskilled, with around 315,000 jobs nationally); and car wash attendant, automatic (light, unskilled work, with around 37,000 jobs nationally).  AR 37.  The ALJ concluded that Plaintiff was not under a disability within the meaning of the Act from the alleged onset date of October 28, 2013, through the date last insured.  AR 37.

Plaintiff sought review of the ALJ's decision in this Court.  ECF No. 1.

/ / /

/ / /

# LEGAL STANDARD

### *Standard of Review*

Congress has provided a limited scope of judicial review of the Commissioner's decision. 42 U.S.C. § 405(g).  A court may set aside the Commissioner's denial of benefits only if the ALJ's determination was based on legal error or not supported by substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) (citing 42 U.S.C. § 405(g)).  "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); *McCallister v. Sullivan*, 888 F.2d 599, 601–02 (9th Cir. 1989).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" also will be upheld.  *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record, not just the evidence supporting the decisions of the Commissioner.  *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989).

1   A decision supported by substantial evidence still will be set aside if the

2   proper legal standards were not applied in weighing the evidence and making a

3   decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir.

4   1988). Thus, if there is substantial evidence to support the administrative findings,

5   or if there is conflicting evidence that will support a finding of either disability or

6   nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*,

7   812 F.2d 1226, 1229–30 (9th Cir. 1987).

8   ***Definition of Disability***

9   The Social Security Act defines "disability" as the "inability to engage in any

10  substantial gainful activity by reason of any medically determinable physical or

11  mental impairment which can be expected to result in death, or which has lasted or

12  can be expected to last for a continuous period of not less than 12 months." 42

13  U.S.C. § 423(d)(1)(A). The Act also provides that a claimant shall be determined to

14  be under a disability only if the impairments are of such severity that the claimant is

15  not only unable to do their previous work, but cannot, considering the claimant's

16  age, education, and work experiences, engage in any other substantial gainful work

17  which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Thus, the

18  definition of disability consists of both medical and vocational components. *Edlund*

19  *v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

20  */ / /*

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 8

1   ***Sequential Evaluation Process***

2         The Commissioner has established a five-step sequential evaluation process

3   for determining whether a claimant is disabled.  20 C.F.R. § 404.1520.  Step one

4   determines if they are engaged in substantial gainful activities.  If the claimant is

5   engaged in substantial gainful activities, benefits are denied.  20 C.F.R. §

6   404.1520(a)(4)(i).

7         If the claimant is not engaged in substantial gainful activities, the decision

8   maker proceeds to step two and determines whether the claimant has a medically

9   severe impairment or combination of impairments.  20 C.F.R. § 404.1520(a)(4)(ii).

10  If the claimant does not have a severe impairment or combination of impairments,

11  the disability claim is denied.

12        If the impairment is severe, the evaluation proceeds to the third step, which

13  compares the claimant's impairment with listed impairments acknowledged by the

14  Commissioner to be so severe as to preclude any gainful activity.  20 C.F.R. §

15  404.1520(a)(4)(iii); *see also* 20 C.F.R. § 404, Subpt. P, App. 1.  If the impairment

16  meets or equals one of the listed impairments, the claimant is conclusively presumed

17  to be disabled.

18        If the impairment is not one conclusively presumed to be disabling, the

19  evaluation proceeds to the fourth step, which determines whether the impairment

20  prevents the claimant from performing work that they have performed in the past.  If

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 9

1    the claimant can perform their previous work, the claimant is not disabled.  20

2    C.F.R. § 404.1520(a)(4)(iv).  At this step, the claimant's RFC assessment is

3    considered.

4    　　　If the claimant cannot perform this work, the fifth and final step in the process

5    determines whether the claimant is able to perform other work in the national

6    economy considering their residual functional capacity and age, education, and past

7    work experience.  20 C.F.R. § 404.1520(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137,

8    142 (1987).

9    　　　The initial burden of proof rests upon the claimant to establish a prima facie

10   case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th

11   Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden

12   is met once the claimant establishes that a physical or mental impairment prevents

13   them from engaging in their previous occupation.  *Meanel*, 172 F.3d at 1113.  The

14   burden then shifts, at step five, to the Commissioner to show that (1) the claimant

15   can perform other substantial gainful activity, and (2) a "significant number of jobs

16   exist in the national economy" which the claimant can perform.  *Kail v. Heckler*, 722

17   F.2d 1496, 1498 (9th Cir. 1984).

18   / / /

19   / / /

20   / / /

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 10

## ISSUES ON APPEAL

Plaintiff's brief raises the following issues regarding the ALJ's decision:

1.      Did the ALJ erroneously discount Plaintiff's subjective symptom statements?

2.      Did the ALJ err in his evaluation of Plaintiff's medical source opinions?

3.      Did the ALJ err in formulating Plaintiff's RFC, resulting in harmful error at step five?

### *Subjective Symptom Testimony*

Plaintiff argues that the ALJ did not provide clear and convincing reasons for discounting her subjective symptom testimony, as the ALJ did not consider the objective medical evidence in the context of the nature of Plaintiff's conditions, which include multi-level cervical degeneration and somatoform disorder, which entails Plaintiff focusing on her physical symptoms, resulting in severe distress and an increased lack of functioning.  ECF No. 14 at 2–3 (citing American Psychiatric Association DSM-5 definition of somatic symptom disorder); *see also* ECF No. 10 at 6–12.  Plaintiff submits that while Plaintiff's "treating and examining providers described pain behavior in excess of what one would expect given the objective medical evidence, none of the providers indicated she was malingering."  ECF No. 14. at 3.  Plaintiff adds that her limitation of her daily and social activities further supports her subjective symptom statements.  *Id.* at 4.  Plaintiff summarizes that "[h]ad the ALJ correctly found claimant's testimony to be consistent with the record,

1  it would have reflected in a sedentary, unskilled RFC, with off task behavior, and

2  unscheduled absences, and claimant would have been found disabled." *Id.*

3      The Commissioner responds that the ALJ relied on substantial evidence in

4  finding that the objective medical record is inconsistent with Plaintiff's subjective

5  testimony.  ECF No. 12 at 3 (citing AR 28–29, 689, 744, 752, 777, 782, 787, 982,

6  1212–13, 1406, 1490–92, 1573, 1830, 1936, 1938, 2145, 2147, 1612, 1637, 2187–

7  89).  The Commissioner further contends that the ALJ cited substantial evidence in

8  finding that Plaintiff's history of conservative treatment to manage her pain was

9  incompatible with the degree of symptoms that Plaintiff alleged.  *Id.* (citing AR 29,

10 1210–12, 2067, 2185).  The Commissioner continues that the ALJ also provided a

11 legitimate reason in finding that the evidence indicated "possible symptom

12 exaggeration, which 'tends to diminish the believability of [Plaintiff's] subjective

13 report of symptoms.'"  *Id.* at 12 (quoting AR 29).  The Commissioner discusses

14 record evidence that indicate "inconsistencies that were suggestive of symptom

15 magnification, or, at the very least, undermined the reliability of Plaintiff's

16 complaints."  *Id.* at 5–7 (citing AR 1490, 1612, and 1637).  Next, the Commissioner

17 argues that the ALJ reasonably found that Plaintiff's treatment record undermined

18 her mental health allegations, as Plaintiff's mental symptoms improved with

19 medication and treatment.  *Id.* at 7–8 (citing AR 30, 772, 1175–77, 1309, 1401,

20 1406, 1813, 1965, 2049–50, 2052, 2062, 2132, 2201, 2229, and 2233).  Lastly, the

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 12

Commissioner asserts that the ALJ relied on substantial evidence in finding that

Plaintiff's activities were at odds with the severity of the symptoms that Plaintiff

alleged. *Id.* at 8–9.

In deciding whether to accept a claimant's subjective pain or symptom

testimony, an ALJ must perform a two-step analysis. *Smolen v. Chater*, 80 F.3d

1273, 1281 (9th Cir. 1996).  First, the ALJ must evaluate "whether the claimant has

presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'"

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v.*

*Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).  Second, if the first test is met and there

is no evidence of malingering, "the ALJ can reject the claimant's testimony about

the severity of her symptoms only by offering specific, clear and convincing reasons

for doing so." *Smolen*, 80 F.3d at 1281.

The ALJ summarized Plaintiff's symptom claims as follows:

In a function report, the claimant alleged difficulty lifting more than 10
pounds due to back pain and upper extremity weakness. Her neck pain
cause headaches and makes it hard to bend her neck. When her pain
increases, she has chest pain and difficulty breathing. She cannot walk
more than 30 minutes due to leg pain and swelling. She needs assistance
from her husband and children to do activities such a [sic] cooking and
household chores. She cannot drive a car due to pain, and because she
had poor concentration and gets lost. She cannot pay bills, count
change, handle a saving account, or use a checkbook due to poor
concentration. She has to alternate between sitting and standing. She
has problems with memory and concentration.

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 13

> The claimant testified to an inability to work due to depression and pain, primarily in her back and neck. She has body aches, and her neck pain radiates to her arms. She cooks and shops for herself, but it is hard. She stays at home because of her symptoms. The claimant testified that she could not return to work due to constant pain, anxiety, and panic attacks. She cannot read or write English, but can read and write in Spanish.

AR 27–28 (citing AR 562–69 and hearing transcripts).

First, the ALJ found that the medical evidence reflected some limitations, but was not consistent with the level of functional impairment that Plaintiff alleged.  AR 28.  The ALJ found that clinical findings do not validate the degree of limitation that Plaintiff claims.  AR 28.  The ALJ cites to medical records, including MRI imaging and physical examinations, showing unremarkable findings to mild abnormalities from June 2018, August 2016, and June 2017.  AR 28–29.  Second, the ALJ reasoned that Plaintiff has "required only a conservative course of treatment for her reported pain symptoms," with Plaintiff's providers recommending only medication, physical therapy, and increased exercise and core strengthening.  AR 29 (citing AR 1210–16; 2061–68).  Third, the ALJ reasoned that the "evidence suggests possible poor effort or symptom exaggeration, which tends to diminish the believability" of Plaintiff's claims.  AR 29–30.  Fourth, the ALJ found that "[m]ost treatment records reflect an unremarkable mental status presentation" by Plaintiff and that Plaintiff's "mental symptoms improved with conservative treatment."  AR 30.  Fifth, and finally, the ALJ reasoned that Plaintiff's activities, including daily activities,

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 14

occasional travel, and seasonal work, "are not entirely consistent with her alleged symptom severity and functional limitation."  AR 30–31.

While an ALJ cannot rely solely on a lack of support for a claimant's subjective complaints from objective medical evidence, inconsistency with the objective medical evidence can qualify as one of several clear and convincing reasons to discount a claimant's statements.  *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (finding that contradiction with medical records is a sufficient basis for rejecting a claimant's subjective testimony); *see also Klein v. Berryhill*, 717 F. App'x 664, 666 (9th Cir. 2017) (finding inconsistency between a claimant's testimony and objective medical evidence can comprise a clear and convincing reason for rejecting the testimony).  With respect to the objective medical record, the ALJ cited substantial evidence supporting that providers and examiners found no clinical explanation for Plaintiff's complaints, regardless of whether the treatment record also shows that Plaintiff consistently reported pain or other symptoms.  The ALJ cited to imaging studies during the relevant period that showed no more than mild findings.  AR 28–29, 982, 1936, 1938, 2145, and 2147.

Critically, the ALJ provided reasons in addition to an inconsistency with the objective medical record, including conservative treatment, poor effort or symptom exaggeration, unremarkable mental status presentation, and activities not consistent with the degree of impairment alleged.  AR 29–31.  Those reasons are supported by

1    substantial evidence.  For instance, with respect to conservative treatment, the ALJ

2    cited to records showing that Plaintiff's physical symptoms were treated with

3    medication, physical therapy, and recommendation to exercise more.  AR 29, 1210–

4    12, 2061–67, 2107–09.  ALJs may rely on evidence of conservative treatment to

5    discount a claimant's subjective complaints.  *Smartt v. Kijakazi*, 53 F.4th 489, 500

6    (9th Cir. 2022).

7        In addition, with respect to possible lack of effort or symptom magnification,

8    the ALJ noted that at an examination relating to Plaintiff's worker's compensation

9    claim in August 2016, the examiner asked Plaintiff to dorsiflex her left foot.  AR 29

10   (citing AR 1490).  The examiner recorded that Plaintiff simply stared at her foot and

11   stated that she could not make it move.  *Id.*  When the examiner reminded Plaintiff

12   that she had walked on her heels a few moments earlier, Plaintiff "was able with

13   much coaxing to resist maximal examiner effort."  AR 1490.  In another record, a

14   physician noted that there was an "element of catastrophizing" in Plaintiff's

15   reporting of her chronic neck and back pain and recommended only conservative

16   treatment for her complaints.  AR 2062–63.  In April 2015, a psychiatrist found that

17   Plaintiff's depression was "in partial remission" with a "fairly low dose" of only one

18   antidepressant.  AR 1175.  Another provider noted that Plaintiff's restriction to

19   employability was that "[s]he feels disabled."  AR 1631.

20

21

With respect to unremarkable mental status examinations, the ALJ cited evidence that Plaintiff presented as "pleasant cooperative, and appropriate" and "not anxious or tearful"; "calm," in a "good" mood, and "pleasant"; and "alert and oriented" at appointments throughout the relevant period. AR 32–33 772, 1309, 1401, 1406, 1965, 2049, 2052, 2062, 2132, 2201, and 2229.

Having found at least four specific, clear, and convincing reasons that the record evidence was inconsistent with the degree of limitation that Plaintiff alleged in her subjective testimony, the Court finds no error on this ground.

### Medical Source Opinions

Plaintiff argues that the ALJ gave inadequate weight to Plaintiff's treating providers, including treating mental health providers Silverio Arenas, PhD; Dr. C. Donald Williams; and Cari Cowan, ARNP, and her providers at the Rehabilitation Institute of Washington ("RIW"). ECF No. 10 at 12–18.

The Commissioner responds that, as the record contains conflicting opinions, the ALJ could discount the contradicted opinions from Dr. Williams, Dr. Arenas, and the Rehabilitation Institute of Washington for specific and legitimate reasons supported by substantial evidence in the record. ECF No. 12 at 10–12. The Commissioner maintains that the ALJ's reasons for discounting these three opinions satisfied this standard. *Id.* at 12.

Plaintiff applied for DIB on approximately May 28, 2015.  AR 129–30. Revisions to rules guiding the evaluation of medical evidence that took effect on March 27, 2017, do not apply to claims filed before March 27, 2017, and the "treating physician rule" under the previous regulations instead applies.  *See* 20 C.F.R. § 404.1527.

Under the treating physician rule, "the weight afforded to a medical opinion depends upon the source of that opinion. A treating physician's opinion, for example, is entitled to greater weight than the opinions of nontreating physicians." *Coleman v. Saul*, 979 F.3d 751, 756 (9th Cir. 2020).  An ALJ must consider the acceptable medical source opinions of record and assign weight to each.  20 C.F.R. § 404.1527(c).  This responsibility often involves resolving conflicts and ambiguities in the medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons for doing so.  *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  "An ALJ can satisfy the substantial evidence requirement by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Reddick*, 157 F.3d at 725)).

An ALJ may discount an otherwise valid medical source opinion as overly conclusory, poorly supported by or inconsistent with the objective medical record, or inordinately reliant on a claimant's self-reported symptoms, provided the ALJ provides clear and convincing reasons to discredit the symptom allegations.  *See, e.g., Coleman v. Saul*, 979 F.3d 751, 757–58 (9th Cir. 2020).

### Drs. Arenas and Williams

Plaintiff argues that the ALJ erred in his treatment of Dr. Arenas because: (1) the ALJ did not explain what activities were inconsistent with Dr. Arenas's findings or Plaintiff's self-reports; (2) the ALJ erroneously faulted Dr. Arenas for opining that Plaintiff would have difficulty securing work due to lack of English skills; and (3) the longitudinal record supports Dr. Arenas's conclusions.  ECF Nos. 10 at 13; 14 at 7.  Plaintiff adds that Dr. Arenas was the only mental health professional to administer the Beck Depression and Anxiety Inventories in Plaintiff's native language, and the ALJ should have found Dr. Arenas's opinions more persuasive given "the level of trust that Dr. Arenas was able to build with the claimant by doing the interview personally in her native language, as well as his experience and education in treating latino [sic] injured workers[.]"  *Id.*

Plaintiff raises closely-related arguments with respect to the ALJ's treatment of Dr. Williams, maintaining that the limitations that Dr. Williams found, although they were expressed in check-box format, were supported by "several years of

1    treatment records that indicate severe depression and anxiety" as well as by Dr.

2    Arenas's findings and the reports of one-time examiners Drs. Fishers and

3    Friedman.  ECF No. 10 at 16 (citing AR 1793, 1798–99).  Plaintiff adds that the

4    other mental health examiners, Rebecca Fisher, MD and Michael Friedman, DO,

5    found that Plaintiff's mental health disorder was not caused by injuries related to

6    her state worker's compensation claim and could not, then, proceed to opine on

7    any of limitations associated with Plaintiff's mental impairments.  *Id.* at 17.

8    Therefore, Plaintiff submits, "the limitations provided by Dr. Williams and Dr.

9    Arenas are significantly more persuasive and probative because they did consider

10   the limitations that would be posed by her mental health disorder."  *Id.*

11       The Commissioner disputes Plaintiff's arguments one by one, but primarily

12   insists that "[t]he 'key question is not whether there is substantial evidence that

13   could support a finding of disability, but whether there is substantial evidence to

14   support the Commissioner's actual finding that claimant is not disabled.'"  ECF

15   No. 12 at 18 (quoting *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997)).

16   The Commissioner submits that the ALJ's identification of substantial evidence in

17   support of her treatment of the treating and examining mental health providers'

18   opinions is sufficient to affirm the ALJ's decision.  *Id.*

19       Dr. Arenas examined and evaluated Plaintiff at the request of Plaintiff's

20   counsel on May 12, 2018.  AR 1800.  Dr. Arenas assessed Plaintiff as suffering

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 20

from chronic pain, somatic symptom disorder, depression, anxiety, and "some post-traumatic stress symptoms." AR 1808. Dr. Arenas opined that "[g]iven the client's clinical profile, the extended time she has been affected, her poor English skills, and her probable lack of viable marketable vocational abilities, [Plaintiff] is probably not treatable to where she would ever return to employment, or to successfully completed retraining." AR 1809. Dr. Arenas continued by opining that Plaintiff is "permanently totally disabled" and that:

> Any further psychological and psychiatric treatments would only be palliative versus curative or rehabilitative. Her chronic pain, emotional, and related cognitive symptoms would severely interfere with abilities to adequately attend, concentrate, remember, follow instructions, be aware of potential hazards or dangers, and with productivity, getting along with fellow trainees or employees, customers, or bosses, managing emotional reactions, and with being on time or regularly present at retraining or work site. A risk of further or additional accidental injury to self or others due to the distraction or inattentiveness from the noted pain and emotional symptoms would be presented.

AR 1809.

The ALJ gave little weight to Dr. Arenas's assessment, finding it to be conclusory, poorly supported, and inconsistent with the longitudinal record. AR 35. The ALJ reasoned that Plaintiff "had an unremarkable presentation [sic] most treatment records, and her mental symptoms improved with treatment." AR 35. The ALJ further found that Plaintiff's inability to follow a three-step task upon examination by Dr. Arenas to be inconsistent with her ability to shop, cook for

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 21

1  herself, care for her children, including an infant, all of which "reasonably require

2  [Plaintiff] to understand, remember, and execute tasks that are at least three-steps

3  [sic] on a regular basis."  AR 35–36.

4     Dr. Williams evaluated Plaintiff on two occasions at Plaintiff's counsel's

5  request.  In July 2014, Dr. Williams completed a medical source statement

6  selecting that Plaintiff was limited by her mental impairment in her ability to carry

7  out several work-related mental activities.  AR 891–92.  Although the form is

8  ambiguous, Dr. Williams may have further opined that Plaintiff's ability to

9  complete a normal workday was impaired.  AR 892.  Dr. Williams indicated that

10  his conclusions were based on clinical records, a clinical interview of Plaintiff, and

11  a personality assessment (the "MMPI").  AR 891–92.  In April 2018, Dr. Williams

12  completed a second medical source statement again opining that Plaintiff is

13  limited, in several categories, in her ability to carry out work-related mental

14  activities.  AR 1796–99.  Dr. Williams provided no explanation on the form except

15  notes that are not decipherable by the Court.  AR 1799.

16     The ALJ gave little weight to Dr. Williams's opinions, reasoning that "the

17  marked limitations he assesses are not consistent with treatment notes, most of

18  which show an unremarkable mental status presentation by the claimant[,]" and are

19  inconsistent with the improvement of Plaintiff's mental symptoms with

20  conservative treatment.  AR 34.  The ALJ further found that the limitations that Dr.

21

Williams expressed were inconsistent with Plaintiff's ability to return to seasonal

work for a part of 2019 and that Dr. Williams opined on a final legal conclusion

reserved to the Commissioner when he assessed limitations in Plaintiff's ability to

complete a normal workday or workweek.  AR 35.

As discussed above, substantial evidence supports that Plaintiff's record

contains largely unremarkable mental status examinations.  *See* AR 32–33, 772,

1309, 1401 1406, 1965, 2049, 2052, 2062, 2132, 2201, 2229.  Likewise,

substantial evidence supports the ALJ's reasoning with respect to conservative

treatment.  *See* AR 29, 1175–77, 1210–12, 1813, 2061–67, and 2107–09.

Moreover, substantial evidence supports that Plaintiff engaged in the activities that

the ALJ discussed.  AR 35–36, 97–98, 746, 1634, 1809, and 2254.

Plaintiff's arguments do not go to the issue of legal error and instead amount

to a request for the Court to reweigh the medical opinions of Dr. Williams and Dr.

Arenas relative to the other medical opinions in the record.  *See Winans v. Bowen*,

853 F.2d 643, 644 (9th Cir. 1987) (noting that it is not the role of the federal court

to reweigh evidence or substitute its own judgment for the Secretary's). The

records that Plaintiff emphasizes do not contradict or otherwise undermine ALJ

Adams's decision, even assuming that they could have supported a different

interpretation.  Both inconsistency with the medical evidence and a claimant's

activities are specific and legitimate reasons for not relying on a treating or

examining provider's opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th

Cir. 2005).   The Court finds no error in the ALJ's treatment of Plaintiff's mental

health evaluator's opinions.

### Rehabilitation Institute of Washington

Plaintiff argues that the ALJ did not give a clear and convincing reason for

giving "little weight" to the opinions of Plaintiff's providers from the

Rehabilitation Institute of Washington ("RIW") on the basis that Plaintiff could

care for her baby in 2016, when the same record "indicates that the claimant could

not pull her pants up anymore because of the strain carrying her baby had on her

neck and back." ECF No. 10 at 17 (citing AR 1634).  Plaintiff submits that the

evidence supports only that Plaintiff would be capable of lifting up to ten pounds

without additional breaks or being off-task or absent.  *Id.*  Plaintiff further argues

that the ALJ erred in finding that the limitation to sedentary work found by the

RIW providers to be temporary, "despite nothing in the records indicating such."

*Id.* (citing AR 1410, 1423, 1513, 1531, and 1600).

The Commissioner responds that the opinions from RIW were "somewhat"

internally inconsistent, in that they opined that Plaintiff is limited to sedentary

work while also opining that Plaintiff could push and pull up to twenty-five

pounds.  ECF No. 12 at 18 (citing AR 150–51, 739–45, 1492–93, 1513, 1423,

1609–14).  The Commissioner adds that the next month, RIW providers indicated

that Plaintiff could perform a very restricted range of work, including carrying no more than two pounds frequently and lifting no more than seven pounds. *Id.* at 19 (citing AR 1513). The Commissioner contends that ALJs may discount opinions for internal inconsistencies such as these. *Id.* (citing *Matney v. Sullivan*, 981 F.2d 1016, (9th Cir. 1992)). Furthermore, the Commissioner argues, that ALJs may discount opinions for being inconsistent with Plaintiff's activities, such as her ability to care for and carry her 18-pound baby and her ability to cook, clean, and shop. *Id.* (citing AR 33, 1634, 857; *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020)). Lastly, the Commissioner maintains that substantial evidence supported that the providers assessed their limitations as temporary and indicated that Plaintiff would ultimately be able to perform light work, and the Commissioner submits that ALJs "may reject opinions that only assess temporary restrictions." *Carmickle*, 533 F.3d. 1155, 1165 (9th Cir. 2008)).

The ALJ gave little weight to the opinions of the multidisciplinary team at RIW. AR 33. The ALJ discussed that in February 2017, the RIW team indicated that Plaintiff is limited to "sedentary" work while also indicating that Plaintiff could lift 12.5 pounds from knee level and could push/pull 25 pounds. AR 33. The ALJ noted that RIW evaluators further assessed significant limitations in March 2017, "including a limitation to carrying no more than 2 pounds frequently and lifting no more than 7 pounds." AR 33 (citing AR 1513). The ALJ further

1    notes that the RIW's assessment "does not reflect an evaluation of function for the

2    entire relevant period because it indicates that the described limitations are

3    temporary, and that the claimant would ultimately be able to perform light work."

4    AR 33.

5            Plaintiff does not dispute that substantial evidence supports each of the three

6    reasons that the ALJ provided for discounting the opinions of the RIW providers,

7    internal inconsistency, inconsistency with Plaintiff's activities, and the temporary

8    duration of the limitations assessed.  *See* AR 33, 857, 1513, 1523, and 1634.

9    Rather, Plaintiff again asks the Court to reweigh the evidence and reach her desired

10   result, which is not the Court's role in this matter.  *See Winans*, 853 F.2d at 644.

11           Accordingly, the Court finds no error in the ALJ's treatment of the medical

12   source opinions, and grants judgment to the Commissioner on this ground.

13   ### *Step Five*

14           Plaintiff contends that the ALJ erred at step five because the VE testified in

15   response to a hypothetical that was incomplete due to the ALJ's allegedly improper

16   consideration of Plaintiff's subjective symptom testimony and the medical opinion

17   evidence.  *See* ECF No. 14 at 8.  The ALJ's hypothetical must be based on medical

18   assumptions supported by substantial evidence in the record that reflect all of a

19   claimant's limitations.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).

20   The ALJ is not bound to accept as true the restrictions presented in a hypothetical

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 26

question propounded by a claimant's counsel.  *Osenbrock*, 240 F.3d at 1164.  The ALJ may accept or reject these restrictions if they are supported by substantial evidence, even when there is conflicting medical evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989).

Plaintiff's argument assumes that the ALJ erred in his treatment of Plaintiff's subjective symptom testimony and the medical source testimony and in formulating the RFC.  As discussed above, the ALJ's assessment of this evidence was not erroneous.  Therefore, the RFC and hypothetical contained the limitations that the ALJ found credible and supported by substantial evidence in the record.  The ALJ's reliance on testimony that the VE gave in response to the hypothetical was proper.  *See Bayliss*, 427 F.3d at 1217–18.  The Court grants judgment to the Commissioner on this final ground.

Having reviewed the record and the ALJ's findings, this Court concludes that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

/ / /

/ / /

/ / /

/ / /

/ / /

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S BRIEF ~ 27

1    Accordingly, **IT IS HEREBY ORDERED** that:

2    1.   Plaintiff's Opening Brief, **ECF No. 10**, is **DENIED**.

3    2.   Defendant the Commissioner's Brief, **ECF No. 12**, is **GRANTED**.

4    4.   Judgment shall be entered for Defendant.

5    **IT IS SO ORDERED**.  The District Court Clerk is directed to enter this

6    Order, enter judgment for Defendant as directed, provide copies to counsel, and

7    **close the file** in this case.

8    **DATED** November 27, 2023.

9

10                                  *s/ Rosanna Malouf Peterson*
                                    ROSANNA MALOUF PETERSON
11                                  Senior United States District Judge

12

13

14

15

16

17

18

19

20

21

ORDER DENYING PLAINTIFF'S BRIEF AND GRANTING DEFENDANT'S
BRIEF ~ 28